FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 02, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JESSICA G.,[1] | No. 1:19-cv-03101-MKD |
|        Plaintiff, | |
| | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
|    vs. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
|        Defendant. | ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 14, and denies Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 6, 2015, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of February 18, 2015. Tr. 305-19. The applications were denied

initially and on reconsideration. Tr. 185-91; Tr. 194-203. Plaintiff appeared

before an administrative law judge (ALJ) on April 3, 2018. Tr. 63-93. On May 7,

2018, the ALJ denied Plaintiff's claim. Tr. 12-32.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through June 30, 2015, has not engaged in substantial gainful activity since February 18, 2015. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: inflammatory bowel disease, ovarian cysts, fibromyalgia, obesity, and migraines. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19. The ALJ then concluded that Plaintiff has the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can lift and carry 20 pounds occasionally, lift and carry 10 pounds frequently, stand and/or walk 2 hours in an 8-hour workday with normal breaks, and sit 6 hours in an 8-hour workday with normal breaks. She can frequently balance and occasionally stoop, kneel, crouch, crawl, and climb. She must avoid even moderate exposure to hazards (e.g., working around heights or moving dangerous machinery).

*Id.*

At step four, the ALJ found Plaintiff is unable to perform any of her past relevant work. Tr. 24. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as charge account clerk, document preparer, and addresser. Tr. 25. Therefore, the ALJ concluded Plaintiff was not under a

disability, as defined in the Social Security Act, from the alleged onset date of February 18, 2015, though the date of the decision. Tr. 26.

On March 21, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ conducted a proper step-three analysis;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3. Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 14 at 2.

## DISCUSSION

**A. Step-Three**

Plaintiff contends that the ALJ erred by finding that Plaintiff's migraines did not equal Listing 11.02. *Id.* at 7-9. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. §§ 416.920(a)(4)(iii); 404.1520(a)(4)(iii). The Listing of Impairments "describes each

of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. §§ 416.925; 404.1525. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (*citing Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy*, 758 F.3d at 1176. If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(iii); 404.1520(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 404.1525(d); 416.925(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the

claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Tackett*, 180 F.3d at 1099. However, " '[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.' " *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairments. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

While Listing 11.02 addresses seizures, it is the most closely analogous listing for migraines. Tr. 19 (citing HALLEX DI 24505.015(B)(7)(B)(example 2). Listing 11.02 requires migraine headaches be "documented by detailed description of a typical [migraine headache], including all associated phenomena." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02. To be of equal severity and duration, Listing 11.02B requires the migraines occur at least once a week for at least three

consecutive months, despite compliance with treatment. *Id.* Listing 11.02D

requires the migraines occur at least once every two weeks for at least three

consecutive months, despite adherence to prescribed treatment, and the claimant

must have a marked limitation in physical functioning or one of the four areas of

mental functioning. *Id.*

Here, the ALJ concluded that Plaintiff's impairments and combinations of

impairments did not meet or equal any listings, including Listing 11.02, finding

there was insufficient evidence that the Plaintiff's migraines satisfied the frequency

or functional effects required by the listings. *Id.* The ALJ provided is no

additional analysis of Listing 11.02.

Plaintiff was diagnosed with migraines prior to the alleged onset date and

has received ongoing treatment for her migraine symptoms. *See, e.g.,* Tr. 586, 607,

618. In 2014, Plaintiff's migraines were noted as only "occasionally" occurring.

Tr. 618. In June 2015, Plaintiff reported a week-long headache, but the frequency

of migraines was not documented. Tr. 606. In September 2015, Plaintiff reported

"frequent" headaches, though the frequency of migraines at that time is not noted.

Tr. 721. In November 2015, Plaintiff reported two to three bad migraines per week

and additional mild migraines as well. Tr. 601. In May 2016, Plaintiff reported

mild migraines once per week and severe ones twice per month. Tr. 598. In

September 2016, Plaintiff was evaluated in a neurology clinic, where she reported

two to three severe migraines per month and a total of 16 to 17 headaches per month.  Tr. 562.  She also reported medication reduced the severity of the headache if she took it at the onset of the migraine.  *Id.*

In November 2016, Plaintiff reported mild daily headaches with severe migraines two times per month, which last up to a week.  Tr. 589.  She was taking Amerge and was started on Gabapentin.  *Id.*  In December 2016, she continued having "fairly" constant headaches with at least two migraines per month.  Tr. 586.  Plaintiff reported that during the migraines, she sometimes loses consciousness.  Tr. 564.  In 2017, Plaintiff reported daily headaches with intermittent migraines, with migraines occurring one to two times per month but lasting up to a week.  Tr. 578, 582, 639.  She reported medications helped manage her migraines.  Tr. 579.  In January 2018, Plaintiff reported migraines "a couple times a month."  Tr. 745.

Plaintiff argues that her migraines functionally equal Listing 11.02B and 11.02D.  ECF No. 14 at 8.  Plaintiff further argues the ALJ erred by not giving specific findings as to why Plaintiff's migraines did not equal Listing 11.02.  *Id.* at 8-9.  However, Plaintiff does not argue that she has a marked limitation in any of the areas of functioning; thus, a requirement of Listing 11.02D cannot be met.  While Plaintiff alleges she experienced 16 to 17 migraines per month, the records indicate this was the number of headaches, not migraines.  Tr. 562.  As discussed above, generally, Plaintiff has reported only experiencing migraines twice per

month, which does not satisfy the requirement of 11.02B.  Though Plaintiff has

reported migraines lasting up to a week, 11.00(H)(4) directs that a continuous

series of seizures is counted as one seizure.  20 C.F.R. Pt. 404, Subpt. P, App. 1,

11.00(H)(4).  Applying that standard to Plaintiff's migraines, even for migraines

lasting up to a week, the migraine would only count as a single incident; thus,

Plaintiff cannot meet the requirement of weekly migraines.

Additionally, while Plaintiff argues her symptoms are as severe as the

listing, Plaintiff does not address most migraine-related symptoms.  Plaintiff only

argues that her migraines cause her to be bed-ridden and at times to lose

consciousness, which should be found to be equal in severity, but the records do

not demonstrate that Plaintiff consistently experienced this level of severe

symptoms.  ECF No. 14 at 8.  In May 2016, Plaintiff reported she had a loss of

consciousness "up to twice a month."  Tr. 598.  In September 2016, Plaintiff

reported that she was able to prevent full loss of consciousness by sitting or lying

down.  Tr. 563.  In December 2017, Plaintiff reported she had only ever had two to

three episodes of "passing out when she has migraines."  Tr. 672-73.  In February

2018, she reported the loss of consciousness occurred twice per month.  Tr. 764.

In August 2018, Plaintiff reported her pain was relieved up to 50 percent by

medication.  Tr. 51.  As argued by Defendant, there is no evidence Plaintiff has

impaired ability to stand, walk, or use her arms, and she has not had any seizure-type presentation. ECF No. 15 at 4.

Plaintiff's other potentially migraine-related symptoms also do not satisfy the frequency or level of severity required by Listing 11.02. Plaintiff has reported nausea at some appointments, Tr. 34, 45, 606, 618, 665, 721, which was treated by Ondanestran, Tr. 643, but she generally reported the nausea is induced by eating, rather than a migraine symptom, Tr. 436, 618-19. At most appointments, Plaintiff did not report nausea, and specifically denied nausea at multiple appointments. Tr. 54, 57, 97, 108, 745, 753, 756. Plaintiff also generally denied vomiting. Tr. 34, 97, 128, 745, 753, 756. Plaintiff has rarely reported dizziness and has generally reported it as a medication side effect, rather than a migraine symptom. Tr. 463, 485, 618, 625, 660. Plaintiff has occasionally reported photophobia, Tr. 129, 589, 753, but otherwise generally did not report, or denied, photophobia, Tr. 472.

Any deficiency in the ALJ's analysis of Listing 11.02 would be harmless error, as Plaintiff has not met her burden of showing her symptoms are of equal severity and duration to Listing 11.02. *See Burch*, 400 F.3d at 683. Plaintiff is not entitled to remand on these grounds.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims. ECF No. 14 at 9-15. An ALJ engages in a two-

step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 20.

First, the ALJ found the objective evidence does not substantiate Plaintiff's allegations of disabling symptoms and limitations. *Id.* An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

"In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017). Fibromyalgia "is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory test to confirm the diagnosis.'" *Id*. at 666 (citing *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)). "[T]he symptoms of fibromyalgia 'wax and wane,' and a person may have 'bad days and good days.'" *Id.*

Here, the ALJ found the records do not support a finding that Plaintiff's pain symptoms related to her fibromyalgia and migraines are as severe as she alleges. Tr. 21. Plaintiff had multiple normal test results, though she had an elevated sed rate and CRP. *Id.* (citing Tr. 484, 489-510, 571, 653). At one exam, she had widespread tender points and diffusely tender muscles, but she also had full range of motion in her extremities. Tr. 21 (citing Tr. 479-88). Plaintiff was generally in no distress, had normal or only mildly decreased range of motion and had a normal gait. Tr. 21 (citing, *e.g.*, Tr. 438, 485, 492, 499, 502, 511, 521, 564). The ALJ also noted that while Plaintiff reports having migraines two to three times per month, her brain MRI was normal and aside from medications, she did not have other migraine treatment, nor did she have intractable migraines. Tr. 21 (citing Tr. 561-63, 578-637, 672-731). Later in the decision, the ALJ noted that the Plaintiff's blackouts were generally based on her self-report, they were noted only occasionally in the records, and she reported her migraine symptoms and pain were generally responsive to medication. Tr. 23.

Plaintiff argues a migraine diagnosis is generally based on a patient's reports rather than objective evidence and thus Plaintiff's reports cannot be rejected only due to a lack of objective evidence. ECF No. 14 at 10-13. Plaintiff further argues the ALJ's assessment of the evidence is inaccurate, as the normal brain MRI is not

conclusive in diagnosing migraines, nor can other labs/tests alone evaluate migraines. *Id.* at 10-11.

While the objective evidence refuted by Plaintiff, such as the MRI, does not provide conclusive evidence that Plaintiff's migraines are not as severe as alleged, any error in the ALJ's consideration of such evidence would be harmless, as the ALJ's overall analysis is based on substantial evidence, as the records overall demonstrate that Plaintiff's migraines and blackouts have not occurred as frequently as alleged, as discussed above. *See Molina,* 674 F.3d at 1115. Further, the records demonstrate Plaintiff reported medications provided some improvement in her symptoms, including decreasing her pain severity and the length of migraines. Tr. 515, 578.

The ALJ also cited to numerous records as evidence of Plaintiff being in no distress and having normal range of motion and gait, despite her fibromyalgia symptoms. Tr. 23. While the records demonstrate some abnormalities, they are generally normal exams with no more than mild abnormalities. *See, e.g.,* Tr. 438, 648 (Plaintiff in mild distress); Tr. 485 (in no acute distress, full range of motion but with pain, tenderness); Tr. 492 (in no acute distress, tenderness in abdomen and spine); Tr. 499 (in no acute distress, abdominal and paraspinous tenderness); Tr. 502, 511, 530, 535, 539, 578 (in no acute distress, no noted abnormalities); Tr. 521 (appears fatigued, left elbow mild edema and mild tenderness, full range of motion

with stiffness); Tr. 564 (normal strength, narrow based gait but otherwise normal, decreased sensation in one area but otherwise normal, and normal reflexes). However, the ALJ also noted Plaintiff reported widespread, chronic pain. Tr. 21 (citing Tr. 433-78, 495-504). To the extent the ALJ may have erred when she relied on a lack of objective examination findings without considering the unique nature of fibromyalgia, any error is harmless, as the ALJ gave other reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

Second, the ALJ found Plaintiff's treatment was inconsistent with her allegations. Tr. 21-22. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is

evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset"). Further, unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Here, the ALJ reasoned Plaintiff's treatment has been routine and/or conservative in nature. Tr. 21. Additionally, Plaintiff testified she was advised to have her ovarian cysts removed if her abdominal pain worsened; however, she has not had the cysts removed. Tr. 22, 76-77. Providers recommended sleep hygiene, lifestyle and activity modification, and medication for her other conditions, which Plaintiff reported have improved her symptoms. Tr. 22 (citing, *e.g.,* Tr. 579, 589, 592-93, 619-20).

Plaintiff argues the ALJ's assessment of Plaintiff's migraine treatment is inaccurate, as Plaintiff was trialed on multiple medications and there is no indication in the record that any other treatment would be appropriate for her

condition.  ECF No. 14 at 12-13 (citing Tr. 589-90).  However, Plaintiff reported improvement in her symptoms with medication, and has reported she is functional with her medication.  Tr. 515, 578-79, 753, 756.  The records do not reflect any recommendations for additional migraine treatment, nor Plaintiff reporting her treatment as ineffective or requesting any additional forms of treatment.  *See Wennet v. Saul* 777 Fed.Appx 875, 877 (9th Cir. 2019) (finding the ALJ's analysis of Plaintiff's conservative treatment, including her failure to see a neurologist or try Botox injections, to be a clear and convincing reason to reject her symptom claims).

Plaintiff reported fibromyalgia symptoms throughout the relevant period and after trialing several medications to treat her pain, headaches, nausea and sleep issues, she was able to find some relief of her symptoms with medications.  Tr. 503, 513, 515, 517, 523-24.  Plaintiff has also reported that she manages symptoms with Icy Hot, heating pads, ice and laying down, and avoids taking medications unless needed.  Tr. 618.  Plaintiff's doctors recommended exercising to improve her symptoms.  Tr. 642-43.  One of her providers also noted Plaintiff's treatment has been "fairly conservative."  Tr. 750.  This was a clear and convincing reason to discount Plaintiff's symptom complaints.

Third, the ALJ found there were inconsistencies between Plaintiff's allegations and testimony regarding her limitations and activities and her

documented activities.  Tr. 22-23.  In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

The ALJ also may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

Here, the ALJ pointed to inconsistencies in Plaintiff's reported activities during the administrative process.  Tr. 22-23.  The ALJ found that while Plaintiff reported independence in her self-care and daily activities, it was inconsistent that

she also reported days she cannot perform any activities. Tr. 22 (citing Tr. 357-64, 369, 374-83). Plaintiff argues there are no inconsistencies in her reports as she has reported having some "good days" but being unable to handle activities the majority of the time. ECF No. 14 at 15.

Plaintiff told providers she helps care for her siblings, walks the dogs and tries to walk daily, which is inconsistent with her reported activities elsewhere. Tr. 22 (citing Tr. 666); Tr. 358, 377 (reporting she does not care for any animals or people). Plaintiff reported going outside only one to two times per month, Tr. 378, and going nowhere on a regular basis, Tr. 379, which is also inconsistent with her other reported activities. Plaintiff reported she can handle personal care without reminders, can prepare meals, and shops in stores. Tr. 359-60. Though Plaintiff reported her mother does her household chores and she does not generally do them herself, Tr. 359, 377, she also stated she will do them if she feels up for it, Tr. 359 and elsewhere reported she likes to help with chores, Tr. 620. While Plaintiff reported blacking out four to five times per month, Tr. 374, this frequency is not reflected in the record, as discussed above. Records also indicate Plaintiff reported playing sports with her cousins, Tr. 619, playing, swimming, spending time outside, helping her cousins with housework, using the computer, and playing videogames, Tr. 620.

On this record, the ALJ reasonably concluded that Plaintiff's allegations are inconsistent with the objective evidence, Plaintiff's conservative treatment and documented activities. These findings are supported by substantial evidence and they are clear and convincing reasons to discount Plaintiff's symptoms complaints.

## C. Medical Opinion Evidence

Plaintiff contends the ALJ erred in her consideration of the opinion of Ms. Shereen Stocker, ARNP. ECF No. 14 at 15-18. Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. §§ 404.1513(a), (e), 416.913(a), (e); SSR 06-03p (Acceptable medical sources include, for example, licensed physicians and psychologists, while other nonspecified medical providers are considered "other sources.").[3] However, an ALJ is required to consider evidence from non-acceptable medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d).[4] An

_____

[3] The definition of acceptable medical sources was changed for claims filed after March 27, 2017. 20 C.F.R. § 416.902. The Court applies the regulation in effect at the time of Plaintiff's filing.

[4] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. § 416.927(f) for claims filed after March 27, 2017. The Court applies the regulation in effect at the time of Plaintiff's filing.

ORDER - 25

ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

On March 20, 2013, Ms. Stocker opined that Plaintiff suffers from chronic abdominal pain that prevents her from working. Tr. 647. The ALJ did not address Ms. Stocker's opinion and thus erred by not giving germane reasons for rejecting the opinion. The error is harmful unless the Court "can confidently conclude that no ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

Here, the opinion was rendered almost two years prior to the alleged onset date. The Ninth Circuit, however, has held that the ALJ is required to consider "all medical opinion evidence." *Tommasetti,* 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)). Indeed, the regulations indicate that medical opinion evidence predating the claimant's filing can be relevant. *See* 20 C.F.R.§ 416.912(d) (stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."). In an unpublished disposition the Ninth Circuit held it was error for the ALJ to "silently disregard" medical

opinion evidence that predates the alleged onset date. *Williams v. Astrue*, 493 F.

App'x 866, 868 (9th Cir. 2012) (quoting *Carmickle v. Comm'r of Soc. Sec.*, 533

F.3d 1155, 1165 (9th Cir. 2008)).  In another unpublished opinion, the Ninth

Circuit held that the ALJ may reject medical evidence that predates the alleged

onset disability date "in favor of more recent opinions" when the more recent

medical opinion recent evidence is "consistent with the record as a whole." *Brown*

*v. Comm'r of Soc. Sec.*, 532 F. App'x 688, 689 (9th Cir. 2013) (citation and

internal quotation marks omitted).

Though Ms. Stocker's opinion was rendered before the alleged onset date,

the ALJ's silent disregard of the opinion was a harmful error.  The ALJ stated that

there are no opinions from treating or examining physicians that indicate

limitations greater than the given RFC, however there is no mention of opinions

from other sources and Ms. Stocker's disabling opinion was not considered.  Tr.

23.  Ms. Stocker opined Plaintiff was unable to work due to abdominal symptoms;

the record demonstrates Plaintiff's abdominal symptoms continued through the

adjudicative period, which the ALJ acknowledged by finding inflammatory bowel

disease and ovarian cysts to be severe impairments.  Tr. 17, 547 (noting Plaintiff

had presented to the hospital for abdominal pain four to five times in only seven

months in 2015).

Defendant argues the ALJ did not error because ALJs are only required to discuss significant and probative evidence and this opinion was neither, as it was provided prior to the alleged onset date. ECF No. 15 at 9. Further, Defendant argues any error would be harmless as the opinion could not impact the determination given its timing. *Id.* at 9-10. However, Ms. Stocker's opinion addressed symptoms that continued through the relevant adjudicative period and as such may have impacted the ALJ's decision.

On remand, the ALJ is instructed to consider Ms. Stocker's opinion and incorporate the limitation into the RFC or give germane reasons for rejecting the opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social

Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED December 2, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 29